DOWNEY BRAND LLP
DALE A. STERN (Bar No. 131108)
JOHN C. MCCARRON (Bar No. 225217)
ELIZABETH B. STALLARD (Bar No. 221445)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone:    (916) 444-1000
Facsimile:     (916) 444-2100
dstern@downeybrand.com
jmccarron@downeybrand.com
estallard@downeybrand.com

Attorneys for Plaintiffs/Counter-Defendants
BYLIN HEATING SYSTEMS, INC. and ROOF
ICE MELT SYSTEMS, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| BYLIN HEATING SYSTEMS, INC., a California corporation, doing business as BYLIN ENGINEERED SYSTEMS, and ROOF ICE MELT SYSTEMS, INCORPORATED, an Oregon corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THERMAL TECHNOLOGIES, INC., a Utah corporation; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTER-CLAIMS | Case No.  2:11-cv-01402-KJM-KJN<br><br>**JOINT STATEMENT RE DISCOVERY DISAGREEMENT (PLAINTIFFS'/COUNTER-DEFENDANTS' PENDING MOTIONS TO COMPEL)**<br><br>Date:         December 20, 2012<br>Time:        10:00 a.m.<br>Judge:       Hon. Kendall J. Newman<br>Trial Date: May 21, 2012 |

Plaintiffs/Counter-Defendants BYLIN HEATING SYSTEMS, INC. ("Bylin Heating") and ROOF ICE MELT SYSTEMS, INC. (collectively, "Plaintiffs"), and Defendant/Counter-Complainant THERMAL TECHNOLOGIES, INC. ("Defendant or "TTI") hereby present their Joint Statement Re Discovery Disagreement regarding the two pending motions to compel filed

by Plaintiffs/Counter-Defendants:

(1) Plaintiffs/Counter-Defendants' Motion to Compel Production of Documents and Further Responses to Requests for Production, Set One; Requests for Admission, Set One; and Interrogatories, Set One (the "First Motion"); and

(2) Plaintiffs/Counter-Defendants' Motion to Compel Production of Documents and Further Responses to Requests for Production, Sets Two and Three, and Requests for Admission, Set Two (the "Second Motion").

## I. NATURE OF THE ACTION AND FACTUAL DISPUTES

Bylin Heating is in the business of engineering and supplying commercial and residential winter freeze protection products throughout the United States and Canada. For over a decade, Bylin Heating has provided customers with an array of icicle and ice dam prevention solutions. Bylin Heating's products, and particularly its line of heated roof panel products, have generated substantial commercial recognition and success. Unlike conventional melting solutions, Bylin Heating's products efficiently and effectively prevent or dissipate ice dams and icicles in heavy snow conditions by targeting key ice accumulation areas of roof structures, regardless of roof design, complexity or snow load.

Bylin Heating is the exclusive licensee of United States Patent No. 5,391,858 entitled "Ice Dam Melting System," which was duly and legally issued February 21, 1995, on application by Donald R. Tourangeau and Joseph Csizmazia for an inventive ice dam melting apparatus and system (hereinafter "the '858 Patent"). Various Bylin Heating products incorporate technology disclosed and claimed in the '858 Patent, and are sold in conjunction with the trademarks ROOF ICE MELT SYSTEMS, RIM and RIM SYSTEMS. Bylin Heating is the exclusive owner of the trademarks ROOF ICE MELT SYSTEMS, RIM and RIM SYSTEMS in conjunction with winter freeze protection and icicle and ice dam prevention solutions.

In March of 2007, Bylin Heating sued Defendant for infringing on Bylin Heating's patent and trademark rights. Specifically, Defendant was manufacturing, selling and distributing products that in some or all respects were infringing the '858 Patent. Defendant was also using the domain name www.rooficemeltsystems.com in violation of Bylin Heating's trademark rights.

1    In March of 2009, Bylin Heating and Defendant signed a Settlement Agreement intended to resolve all issues raised in the 2007 lawsuit (filed in this Court under Case No. 2:07-CV-00505 FCD-KJM). That Settlement Agreement included provisions and drawings regarding what the parties agreed would constitute a breach of the Agreement. The instant lawsuit alleges that Defendant has manufactured, sold, and distributed products in breach of the Settlement Agreement. Plaintiffs also allege that Defendant has breached the Settlement Agreement by failing to transfer the domain name for www.rooficemeltsystems.com to Bylin Heating, and maintain that Defendant's continued use of the domain name www.rooficemeltsystems.com has damaged them by directing customers to Defendant that would otherwise do business with Bylin Heating. Defendant denies these allegations.

## II. DEFENDANT'S ADDITIONAL FACTUAL CONTENTIONS

As provided for the in Settlement Agreement, Defendant's panel systems did not violate the '858 Patent, nor would they be in breach of the Settlement Agreement if the specified heating elements were used with the panel systems. Despite this, following the execution of the Settlement Agreement, Defendant voluntarily re-designed its panel systems in accordance with the drawings in the Settlement Agreement. Defendant replaced old panel systems with new panel systems approximately six (6) months after the execution of the Settlement Agreement. During the brief period of time in 2009 where old panel systems were sold, Defendant maintains that the specified heating elements were used, and, therefore, the panel systems did not breach the terms of the Settlement Agreement. Furthermore, Defendant did not own the domain name set forth above, but did authorize its transfer and made several attempts to have the domain name transferred to Plaintiffs. However, in order to make that transfer, Plaintiffs had to contact the service provider/owner of the domain name. According to the service provider, they did not receive contact from Plaintiffs until after the current action was filed. Once that contact was made, the domain name was transferred.

## III. DETAILS OF THE CONFERENCE OR CONFERENCES

Because there are two pending Motions to Compel, the meet and confer efforts are broken out by Motion below.

3

A.  **First Motion**

Plaintiffs served their Requests for Production, Set One, Requests for Admission, Set One, and Interrogatories, Set One, on July 24, 2012. Defendant served its responses to these three sets of written discovery on August 27, 2012. One of the main issues identified in Defendant's responses was the need for a stipulated protective order to be in place prior to its provision of certain information. On September 12, 2012, after serving the responses, Defendant prepared and provided a draft order, which Plaintiffs responded to on September 19, 2012. Plaintiffs worked with Defendant to finalize the order. The process ended up taking weeks, and Plaintiffs were still without any responsive information. Accordingly, on October 17, 2012, Plaintiffs sent meet and confer correspondence detailing their issues with Defendant's responses and a clean copy of the negotiated protective order for Defendant's signature. (Declaration of Elizabeth B. Stallard in Support of Joint Statement (hereinafter, "Stallard Decl.") at ¶ 17, Ex. I.) Defendant's counsel signed that version on October 19, 2012, and it was filed on October 22, 2012. (Docket No. 31.) On October 24, 2012, Defendant's counsel moved the Court for an order permitting them to withdraw as counsel. (Docket No. 32.) The proposed protective order was then rejected by the Court on or about October 29, 2012. (Docket No. 33.) On Tuesday, October 30, 2012, Plaintiffs sent meet and confer correspondence to Defendant's counsel by email discussing the need to correct the identified deficiencies and get a new protective order filed so that documents would be produced. Plaintiffs contacted Defendant's counsel again on Monday, November 5, 2012, because no response had yet been received. Counsel for Defendant was traveling much of the week of October, 29, 2012 and was unable to respond to Plaintiff's correspondence in substance until 4:26 p.m. on Tuesday, November 6, 2012. At that time, the parties agreed to correct the identified deficiencies and get a new protective order filed. (*See* Docket No. 32-1 [Declaration of Krista J. Dunzweiler filed in support of the Reply to the Opposition to the Motion to Withdraw ¶ 11].)

On November 7, 2012, at 5:09 p.m., Plaintiffs' counsel sent a detailed meet and confer letter to Defendant's counsel that provided a draft protective order, asked Defendant to respond to its October 17, 2012, meet and confer correspondence, and identified various deadlines to provide

4

responses with respect to these issues. (Stallard Decl. at ¶ 2, Ex. A.) Plaintiffs' counsel then realized that existing calendar conflicts and the impending close of discovery required getting a Motion to Compel on file before some deadlines identified in the November 7 correspondence would lapse. Accordingly, Plaintiffs' counsel sent a letter the following day enclosing the Notice of Motion to Compel, requesting that the parties meet and confer with respect to that Motion at 2 p.m. on November 16, 2012, and explaining that the hope was that Defendant would provide compliant responses and documents so that the Motion could then be taken off calendar. (*Id.* at ¶ 3, Ex. B.)

On November 12, 2012 (after the deadline Plaintiffs gave Defendant for responding to the draft Stipulated Protective Order had passed) Defendant responded with minor proposed edits to the draft Protective Order. (*Id.* at ¶ 4, Ex. C.) Plaintiffs' counsel made the suggested edits and sent a new draft to Defendant's counsel the same day. (*Id.*) In the correspondence accompanying the revised protective order, Plaintiffs' counsel asked Defendant to execute the Protective Order and confirm whether or not the proposed time for the meet and confer would work. (*Id.*) After several more emails, Defendant's counsel confirmed she would appear for the meet and confer at the suggested time on November 16, 2012. (*Id.*) On November 14, 2012, the Court signed the Stipulated Protective Order, alleviating the concerns raised by Defendant's counsel throughout the meet and confer process. (Docket No. 38.)

On November 16, 2012, prior to Defendant's provision of responses to the written discovery that is the subject of Plaintiffs' Second Motion, the parties met at the offices of counsel for Plaintiffs to discuss the issues raised in Plaintiffs' October 17, 2012, meet and confer correspondence. (*Id.* at ¶ 5.) Elizabeth B. Stallard and Courtland C. Chillingworth of Downey Brand LLP were in attendance for Plaintiffs, and Krista Dunzweiler of Locke Lord LLP was in attendance for Defendant. (*Id.*) Two hours before the conference Ms. Dunzweiler provided a written response to the October 17, 2012, meet and confer correspondence addressing various issues and indicating that supplemental responses and documents would be forthcoming, so the conference focused on addressing the few areas that remained in dispute notwithstanding the written response and clarifying/confirming the meaning behind certain portions of the written

5

response. (*Id.* at ¶ 6, Ex. D.)

As detailed below, by the end of the conference, counsel for Plaintiffs understood that the parties had reached agreement on nearly all of the issues raised in Plaintiffs' meet and confer correspondence. (*Id.* at ¶ 7.) Defendant's counsel also informed Plaintiffs' counsel during the conference that supplemental discovery responses and a document production were ready, and that Defendant's counsel was simply waiting for client approval in order to provide them. (*Id.*)

Defendant did not serve those supplemental responses or documents until nearly two weeks later on November 29, 2012 (the same day Plaintiffs filed their Second Motion to Compel). (*Id.* at ¶ 8.) At that time, Defendant provided the following: (1) supplemental responses to Plaintiff's Interrogatories, Set One; (2) supplemental responses to Plaintiffs' Requests for Admission, Set One; and (3) 104 pages of documents. (*Id.*) No supplemental responses to Plaintiffs' Requests for Production, Set One were provided, nor did Defendant provide a privilege log. (*Id.*)

On December 5, 2012, Plaintiffs sent written correspondence to Defendant in anticipation of the meet and confer conference scheduled for later that day with respect to the Second Motion. (*Id.* at ¶ 9, Ex. E.) In that correspondence, Plaintiffs also identified the remaining deficiencies with respect to the discovery that is the subject of the First Motion (and which Plaintiffs had expected to be resolved when Defendant provided its supplemental responses). (*Id.*) Defendant's counsel indicated in response to this correspondence that she did not believe it made sense to meet and confer in person before she had a chance to take Plaintiffs' identified concerns to her client, and offered to meet on Monday, December 10, instead.[1] (*Id.* at ¶ 10, Ex. F.) Plaintiffs' counsel was not comfortable waiting until Monday (the day this Joint Statement was due) to participate in a meet and confer regarding all of these outstanding issues, and also did not believe that the parties needed to wait until Defendant's counsel spoke with her client in order to meet and confer. (*Id.*) Plaintiffs' counsel believed, given the prior history of meeting and conferring with respect to this discovery, Defendant's apparent efforts to delay and/or avoid addressing

---

[1] Defendant's counsel knew that Plaintiffs' counsel handling these matters would be out of the office on December 6 and 7. (Stallard Decl. at ¶ 10, Ex. F.)

6

1289447.4

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

1 outstanding discovery issues, and the extreme position Defendant had taken with respect to
2 discovery that is the subject of the Second Motion (as explained below), there was no reason the
3 parties should not simply proceed with their already-scheduled meeting. (*Id.*) However,
4 Defendant's counsel again indicated that she did not believe it would be productive to meet that
5 day, and instructed Plaintiffs' counsel to take the meeting off calendar, pursuant to Plaintiff's
6 request that she send such an affirmative statement, and after providing that Defendant would not
7 assert that Plaintiff had failed to attempt to meet and confer. (*Id.*) Defendant's counsel also
8 indicated in her response that she would communicate with Plaintiffs' co-counsel in her absence
9 "if/when I have information that will enable us to resolve outstanding issues." (*Id.*) In response
10 to that information, Plaintiffs' counsel instructed Defendant's counsel to communicate via email
11 if she obtained any information regarding these issues while Plaintiffs' counsel was out so that
12 this information could be included in the draft joint statement. (*Id.*)

13    As of the time this draft was finalized and provided to Defendant's counsel (shortly after 9
14 am on Monday morning, December 10) Plaintiffs have received no response to their meet and
15 confer correspondence, or any other communication from Defendant regarding the deficiencies
16 identified in that correspondence that are the subject of the First Motion. (*Id.* at ¶ 11.)

17   **B.** **Defendant's Supplement to "First Motion" Summary**

18    Defendant can provide further information to the Court regarding its communication with
19 Plaintiffs and the responses, but may only do so in an *in camera* review. Recently, the parties
20 have submitted a Stipulation and Proposed Order to the Court to amend the scheduling order
21 moving many of the discovery deadlines back. (Docket No. 47.)

22   **C.** **Second Motion**

23    On November 27, 2012, Plaintiffs' counsel sent email correspondence to Defendant's
24 counsel inquiring whether Defendant had served responses to Plaintiffs' Requests for Production,
25 Set Two (which were due to be served no later than November 19, 2012) and Plaintiffs' Requests
26 for Production, Set Three, and Requests for Admission, Set Two (which were due to be served no
27 later than November 26, 2012). (*Id.* at ¶ 10, Ex. F.) In response, Defendant's counsel stated as
28 follows: "They were all timely served. I will check with my assistant regarding the method."

7

1   (*Id.*)

2   Defendant's counsel never followed up on this correspondence. (*Id.* at ¶ 12.) However,
3   on Wednesday, November 28, 2012, Plaintiffs received Defendant's Responses to Plaintiffs'
4   Requests for Production, Set Three, and Requests for Admission, Set Two (although the latter
5   were erroneously titled as responses to Plaintiffs' Requests for *Production*, Set Two). (*Id.*) Later
6   that same day, Plaintiffs' counsel contacted Defendant's counsel via email about the deficiencies
7   in the responses received (primarily that Defendant was refusing to answer all of the requests
8   contained in both sets of discovery). (*Id.* at ¶ 10, Ex. F.) In that same correspondence, Plaintiffs'
9   counsel also again explained that responses to Plaintiffs' Requests for Production, Set Two, had
10  never been received, and asked if Defendant would in fact be providing responses. (*Id.*) Finally,
11  this correspondence requested that the parties get a time on calendar the following week to meet
12  and confer with respect to all three sets of discovery, and asked for available times Monday
13  through Wednesday (December 3-5). (*Id.*)

14  Defendant's counsel did not respond. (*Id.*) So on Friday, November 30, the last business
15  day before Plaintiffs' counsel had offered to meet, Plaintiffs' counsel again sent correspondence
16  to Defendant's counsel asking if a meet and confer could be put on calendar. (*Id.*) In this
17  correspondence, Plaintiffs' counsel also informed Defendant's counsel that she would be out of
18  the office Thursday and Friday of the following week, so Monday through Wednesday were the
19  only days that would work before the Monday, December 10, deadline for submitting a joint
20  statement. (*Id.*)

21  Plaintiffs' counsel closed the correspondence by suggesting either Monday morning or
22  Tuesday afternoon for the meet and confer, and also indicated that she would send a letter in
23  advance of the meeting (likely Saturday, December 1) outlining the outstanding issues (*Id.*)

24  Defendant's counsel did respond to this email, and explained that neither Monday or
25  Tuesday would work, but that Wednesday would, and indicating a preference to meet in the
26  afternoon. (*Id.*) Defendant's counsel did not respond to any of the other items stated in
27  Plaintiffs' earlier correspondence. (*Id.*) Plaintiffs' counsel then responded with a suggested time
28  (2 p.m.) and it was subsequently confirmed. (*Id.*) Since the parties would now not be meeting

8

until Wednesday, and since Defendant's counsel had made no mention of needing the written outline Plaintiffs' counsel had volunteered to provide before the meet and confer, Plaintiffs' counsel reasonably assumed that it would be appropriate to provide that information the following week.

On Tuesday, December 4, 2012, Plaintiffs finally received Defendant's responses to their Requests for Production, Set Two. (*Id.* at ¶ 13.) From the information provided with the document, it appears that the responses were timely mailed on November 19, 2012, but for some reason rejected by the postal service and returned to Defendant's counsel. (*Id.*) Upon receipt of the responses, Plaintiffs' counsel sent an email to Defendant's counsel indicating that the responses would be reviewed that day and the written outline of issues would be provided by the following morning (the day of the meet and confer). (*Id.* at ¶ 14, Ex. G.) Defendants' counsel did not respond. (*Id.*)

Plaintiffs' counsel provided her letter via email at 11:30 the following morning. (*Id.* at ¶¶ 9-10, Exs. E-F.) Defendant's response to that letter is detailed above – and in the interest of efficiency will not be repeated again here. However, and once again, as of the time this draft was finalized and provided to Defendant's counsel (shortly after 9 am on Monday morning, December 10) Plaintiffs have received no response to their meet and confer correspondence, or any other communication from Defendant regarding the deficiencies identified in that correspondence that are the subject of the Second Motion. (*Id.* at ¶ 15.)

### D. Defendant's Supplement to "Second Motion" Summary

Defendant can provide further information to the Court regarding its communication with Plaintiffs and the responses, but may only do so in an *in camera* review. Recently, the parties have submitted a Stipulation and Proposed Order to the Court to amend the scheduling order moving many of the discovery deadlines back. (Docket No. 47.)

## IV. PLAINTIFFS' CONTENTIONS AS TO EACH CONTESTED ISSUE

There are a number of individual requests at issue in these Motions. Plaintiffs have therefore tried to provide a succinct summary of all of the remaining issues below. Many of the issues are recurring and/or not specific to a particular request. In addition, because Defendant did

9

not respond to Plaintiffs' December 5, 2012, correspondence, Plaintiffs have been unable to narrow the remaining issues between the parties. Accordingly, the issues are organized below by set of discovery and then by topic as appropriate. Copies of all of the relevant discovery responses are also attached as exhibits to the Declaration of Elizabeth B. Stallard should reviewing the individual requests or responses be helpful to the Court.

### A.     Plaintiffs' Requests for Production of Documents to Defendant, Set One

Defendant did not produce a single document with its responses to Plaintiffs' Requests for Production, Set One, even though in many cases Defendant indicated that it had responsive documents to produce. (*See* Responses to Requests Nos. 19-20, 23-27, 29-34, 51.) Defendant's responses to a number of other Requests asserted that the information requested would be produced only once a stipulated protective order was in place. (*See* Responses to Requests Nos. 28, 35, 42-50, 52-71, 75-84.) Defendant's responses also asserted a number of objections to the vagueness, breadth and subject matter of the requests, and relied on those objections as the basis to not produce any documents at all. (*See* Responses to Requests Nos. 13-18, 22.) Finally, Defendant objected to many of the requests to the extent that they sought information protected by an applicable privilege. (*See, e.g.*, Responses to Requests Nos. 1-19, 23-34, 51-74.)

After the filing of the First Motion, and as a result of the meet and confer efforts culminating with the conference on November 16, 2012 (as detailed above), Plaintiff understood that Defendant would do the following with respect to this set of discovery:

(1) provide information in response to Requests Nos. 19-20, 23-27, 29-34, and 51, as Defendant had already stated it would do in its responses;

(2) provide information responsive to Requests Nos. 28, 35, 42-50, 52-71, and 75-84, because Defendant's reason for withholding the documents responsive to these Requests – entry of a stipulated protective order – had already occurred;

(3) provide information in response to Requests Nos. 1-18 only for the time period on or after the Effective Date of the Settlement Agreement, which would also include any document created prior to that Effective Date so long as it related to a sale, training, marketing effort, instruction, etc. that occurred on or after the Effective Date and was otherwise responsive; and

10

1     (4) provide information responsive to Requests Nos. 19-22.

    On November 29, 2012, Defendant served a 104 page document production. (Stallard Decl. at ¶ 8.) However, supplemental responses were not provided clarifying and/or removing Defendant's previously-asserted objections to the various Requests at issue. Moreover, although several responses asserted objections on the basis of privilege, and Defendant's counsel repeated the commitment to provide a privilege log for any documents withheld on that basis in her November 16, 2012, meet and confer correspondence, no privilege log (or any other means of evaluating an asserted privilege) was provided. (*Id.* at ¶ 6, Ex. D; ¶ 8.)

    In addition, it appears that the document production is incomplete. As but a few examples:

- Although Defendant's supplemental responses to Plaintiffs' Interrogatories, Set One, reference at least two instances where Defendant sold existing panel inventory after the effective date of the Settlement Agreement (*see, e.g.,* Response to Interrogatory No. 4) Defendant only appears to have produced documents relating to one customer/transaction.

- It does not appear that Defendant has produced any marketing materials, or all of the materials provided during its training sessions, as sought by Requests for Production Nos. 13-14 and 22.

- It does not appear that Defendant has provided the organizational charts sought by Requests Nos. 75-84.

- While it is apparent that hard copies of some emails were produced, it does not appear that all electronically-stored information was produced.

    Plaintiffs have no way of identifying the individual documents that were not produced. Nor can Plaintiffs determine, since Defendant failed to amend its responses, whether the apparently missing documents have been withheld or simply do not exist. In addition, it does not appear that the documents Defendant did provide were produced as kept in the usual course of business or organized and labeled to correspond to the categories in the request, which merely compounds the difficulty Plaintiffs face in their effort to determine whether full compliance has actually been obtained. Fed. R. Civ. Proc. 34(b)(2)(E)(i).

    Plaintiffs have every reason to believe based on the few examples listed above that the document production is deficient. Since Defendant has acknowledged that it has responsive

1  documents and agreed to produce them, there is no legitimate basis for such documents to
2  continue to be withheld, or for Defendant to have forced Plaintiffs to unnecessarily incur the cost
3  (in both time and resources) required to seek complete compliance by way of this Motion.
4  Moreover, given the piecemeal and dilatory way that Defendant has addressed these deficiencies,
5  Plaintiffs have every reason to be concerned that they cannot rely upon Defendant to comply with
6  its discovery obligations voluntarily.
7      The parties reached agreement on the remaining deficiencies and Defendant agreed to
8  comply. The only remaining issue is compelling full compliance, which unfortunately Plaintiffs
9  were not able to obtain in the absence of a Court order despite their repeated efforts.
10 Accordingly, Plaintiffs respectfully request that this Court issue an order: (1) compelling
11 Defendant to produce documents responsive to Plaintiffs' Requests for Production to Defendant,
12 Set One, Nos. 1-35, 42-71 and 74-84; and (2) compelling Defendant to provide supplemental
13 responses to Plaintiffs' Requests for Production to Defendant, Set One, Nos. 1-22 and 28.
14 Moreover, because Plaintiffs do not know if Defendant is withholding any documents on the basis
15 of privilege, this Court should also order Defendant to either produce a log sufficient for Plaintiffs
16 to assess this assertion, or confirm that no documents are being withheld on privilege grounds.

    **B.**    <u>**Plaintiff's Interrogatories to Defendant, Set One**</u>

18     As detailed herein, on November 29, 2012, Defendant served a set of supplemental
19 responses to this set of discovery. However, the supplemental responses do not include an
20 amended response for Interrogatory No. 23, which still indicates that the responsive information
21 will be "disclosed following the parties (sic) stipulation to a protective order." The parties'
22 stipulated protective order was entered into and approved on November 15, 2012, after the First
23 Motion was filed but well in advance of when these supplemental responses were served.
24 (Docket No. 38.) There is therefore no reason for Defendant to have failed to amend this
25 response. In addition, although Plaintiffs raised this issue with Defendant in their meet and
26 confer correspondence of December 4, 2012, Defendant has provided no indication as to whether
27 it will address this deficiency.
28     In light of these circumstances, Plaintiffs respectfully request that the Court issue an order

requiring Defendant to amend its response to Interrogatory No. 23 so as to provide the responsive information, and to provide the required verification for its responses to this discovery (as no verification has been provided for the supplemental responses to date).

### C. Plaintiff's Requests for Production to Defendant, Set Two

Defendant's responses to each of the eight (8) requests in this set of written discovery, which Plaintiffs did not receive until December 4, 2012, assert an objection to the extent that privileged documents are being sought and indicate that the responsive documents will be produced in accordance with the Protective Order entered into this action. (*See* Responses to Requests Nos. 85-92.) However, and despite Plaintiffs' efforts to meet and confer about this issue, Defendant will not confirm whether any documents responsive to this set of discovery have actually been produced.

Moreover, and as detailed above, the 104 pages of documents Defendant provided on November 29 appear incomplete, and also do not appear to have been produced as kept in the usual course of business or organized and labeled to correspond to the categories in the request, as required by FRCP 34. Fed. R. Civ. Proc. 34(b)(2)(E)(i). There is consequently no way for Plaintiffs to determine whether compliance has occurred from what has been provided. Of course, since no privilege log has been provided, there is also no way for Plaintiffs to know if any such protection has been properly asserted – or is being asserted at all.

Accordingly, Plaintiffs respectfully request that this Court issue an order compelling Defendant to produce documents responsive to Plaintiffs' Requests for Production to Defendant, Set Two, Nos. 85-92. Moreover, and once again, because Plaintiffs do not know if Defendant is withholding any documents on the basis of privilege, this Court should also order Defendant to either produce a log sufficient for Plaintiffs to assess this assertion, or confirm that no documents are being withheld on privilege grounds.

### D. Plaintiffs' Requests for Admission to Defendant, Set Two

Defendant's responses to each of the requests served in this set of written discovery indicate, along with assorted boilerplate objections, that it will not provide responses because the requests seek information that "will not aid Plaintiffs in establishing whether [Defendant] sold

products that were in violation of the Settlement Agreement entered into between Plaintiffs and [Defendant], . . . nor will it aid in [Plaintiffs'] defense of the claims asserted against [them] by [Defendant]." (*See* Responses to Requests Nos. 15-43.) Defendant's position, as explained below, appears to be directed at preventing Plaintiffs' discovery of improper conduct, and for that reason alone should be rejected. Of course, at a minimum Defendant's position misapplies the applicable discovery standard, and is unsustainable on that basis as well.

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Fed. R. Civ. Proc. 26(b)(1). Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Each of the requests in this set of discovery seeks either (1) basic information about Defendant; or (2) information regarding the relationship between Defendant and/or its principals and a company called Engineered Roof-De-Icing, Inc. All of this information is undeniably relevant to Plaintiffs' claims in this action and/or their defense of the counterclaims Defendant has raised against Plaintiffs in this action, and is therefore properly discoverable.

With respect to the basic information about Defendant, there is no doubt that the refusal to answer these questions is improper. As but one example, there is no legitimate basis for Defendant to assert that Plaintiffs are not even entitled to know whether Michael Gurr is a current officer of Defendant (Request No. 15) when Defendant made this fact relevant by asserting it in its counterclaims. (*See* Counterclaims at ¶ 53.) Moreover, because Defendant has asserted affirmative defenses indicating that the actual harm to Plaintiffs was caused by "independent, non-affiliated persons who were not acting on behalf of, or within the course and scope of any relationship with [Defendant]," information about the structure and operations of both Defendant and Engineered Roof De-Icing, Inc. is now squarely at the center of this dispute, and certainly within the scope of permissible discovery.

Of course, the factual circumstances of Engineered Roof De-Icing, Inc.'s formation also confirm why this discovery is proper. The organizational documents for Engineered Roof De-Icing, Inc. indicate that Heather Gurr, Michael Gurr's wife, registered this entity with the State of

Utah in September 2012. (Stallard Decl. at ¶ 16, Ex. H.) In addition, because Defendant's customers are now routed to Engineered Roof De-Icing's websites when they connect to Defendant's websites on the Internet, the logical conclusion to draw is that Defendant's operations are being transferred to Engineered Roof De-Icing, Inc. (or at a minimum that the two entities are operating in concert). Whatever the true circumstance may be, the information sought by this set of discovery is undeniably relevant to Plaintiffs' current claims for breach of the Settlement Agreement. For example, if Engineered Roof De-Icing, Inc. is a separate entity in name only, its conduct is just as relevant as Defendant's to proving Plaintiffs' claims – and disproving Defendant's asserted affirmative defenses. Or if Defendant is acting – and has acted – to transfer its operations to Engineered Roof De-Icing, Inc. in the manner that the currently-known facts suggest, this information demonstrates an effort to frustrate Plaintiffs' ability to prove their claims – and ability to collect on their eventual judgment – that Plaintiffs are certainly entitled to uncover. Finally, because Defendant has wholesale refused to respond to this set of discovery (and the corresponding Requests for Production addressed below), including refusing to answer basic questions that it put at issue in its own counterclaims, there is every reason to conclude that Defendant is hiding something it knows is relevant, and that at the very least Defendant will not provide the responsive information if this Court does not order compliance.

In light of these circumstances, Plaintiffs respectfully request that the Court issue an order requiring Defendant to supplement its responses to Plaintiffs' Requests for Admission to Defendant, Set Two, Nos. 15-43 so as to provide the responsive information.

E.   **Plaintiffs' Requests for Production to Defendant, Set Three**

The requests in this set of discovery are a companion to Plaintiffs' Requests for Admission, Set Two, seeking: the information supporting Defendant's denial of any of the Requests for Admission in Set Two (Requests Nos. 93-122); information related to the fact that Defendant's customers are routed from its websites to Engineered Roof De-Icing, Inc.'s websites (Requests Nos. 123-131); and information regarding Engineered Roof De-Icing, Inc.'s ownership, relationship with Defendant, and conduct in violation of the Settlement Agreement (Requests Nos. 132-138). As in the case of Plaintiffs' Requests for Admission, Set Two, Defendant refused

15

to answer any of the Requests or produce documents on the grounds that such information would not aid Plaintiffs in establishing their claim (and in some cases, also asserted that the information requested would not aid Plaintiffs in their defense against Defendant's claims). (*See* Responses to Requests Nos. 93-138.) However, and as already explained above, all of the information sought by each of these requests is well within the scope of permissible discovery and should be provided, particularly given the strong suggestion that Defendant's refusal to provide this discovery is grounded in an improper motive.

Accordingly, Plaintiffs respectfully request that this Court issue an order compelling Defendant to provide supplemental responses and produce documents responsive to Plaintiffs' Requests for Production to Defendant, Set Three, Nos. 93-138. Moreover, and once again, because Plaintiffs do not know if Defendant will withhold any documents on the basis of privilege, this Court should also order Defendant to either produce a log sufficient for Plaintiffs to assess this assertion, or confirm that no documents are being withheld on privilege grounds when it does make its production.

### F.     Plaintiffs Are Entitled to Sanctions

A court "must" award the moving party its reasonable expenses incurred in making a motion to compel, including attorney's fees, against any party "whose conduct necessitated the motion," or the "attorney advising that conduct." Fed. R. Civ. Proc. 37(a). Such an award of expenses does not require a showing of willfulness or improper intent. *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982). In determining whether an award of sanctions is appropriate, a court may consider whether the opposing party's conduct was "substantially justified" or if "other circumstances make an award of expenses unjust." Fed. R. Civ. Proc. 37(a)(ii)-(iii). .

As detailed herein, Plaintiffs have made diligent and reasonable efforts to obtain compliance informally, but Defendant has continued to inexplicably delay and/or refuse to comply with its known – and often conceded – discovery obligations. Defendant's efforts to obfuscate information and delay providing information have forced Plaintiffs to incur significant expense in order to address these clear discovery deficiencies, and also forced Plaintiffs to seek to

move out existing case deadlines because they have yet to receive the discovery they need in order to proceed with depositions or dispositive motions. Particularly since Defendant has raised its own claims against Plaintiffs, it should not be allowed to manipulate discovery practice in order to prevent Plaintiffs from moving forward with the resolution of this action – or force this Court and Plaintiffs to deal with the additional expense and time required to obtain Defendant's compliance – at the very same time that Defendant is apparently moving its assets and business operations to another entity.

Plaintiffs therefore respectfully request that in addition to granting their Motions to Compel this Court award sanctions to Plaintiffs in the amount of the costs and fees incurred in addressing these issues (subject to proof), or whatever other amount is deemed appropriate by the Court.

## V. DEFENDANT'S RESPONSE

With regard to Plaintiff's first Request for Production of Documents, Defendant has produced all documents that it knows to have in its possession. It has completed a thorough review of its records, and provided the documents that it has located that are responsive. As set forth above, the product sold that is at-issue in this action was sold in 2009 for a period of approximately six (6) months. Plaintiffs waited approximately two (2) years before bringing this action. Given the amount of time that has passed between the sale of the product and the filing of this action, it is foreseeable that documents that existed at the time of the sales are no longer in existence. Defendant has made a thorough review of its records and produced documents that it is in possession of and that it believes are responsive to this Request for Production, Set One.

With regard to Plaintiff's Special Interrogatories, Plaintiffs have served amended responses, in accordance with the issues raised in the October 17, 2012 letter. Plaintiffs have subsequently raised other issues with the responses in their most recent meet and confer correspondence sent on the morning of the second scheduled meet and confer conference (which did not occur as set forth above). Defendant can provide further information to the Court regarding the responses and communication with Plaintiffs, but may only do so in an *in camera* review.

17

With regard to Plaintiff's Request for Production of Documents, Set Two, Defendant continues to review its records, and will provide documents if and when they are located. As set forth above, the Plaintiffs waited approximately two years to bring this action. Given the amount of time that has passed between the sale of the product and the filing of this action, it is foreseeable that documents that existed at the time of the sales are no longer in existence. It should be noted that these Requests were not received until Defendants' counsel's motion to withdraw was filed. Defendant can provide further information to the Court regarding the responses, but may only do so in an *in camera* review.

With regard to Plaintiff's Requests for Admission, Set Two, and Requests for Production Set Three, Plaintiffs have sought information relating to a non-party entity, as well as the relationships between non-party individuals with the non-party entity. This Requests are not appropriate to be asked of Defendant. Furthermore, they are not reasonably calculated to lead to admissible evidence in this action; Plaintiffs have and cannot provide a basis for seeking this information in order to establish its claims that TTI breached a Settlement Agreement in 2009. Apparent from the factual background provided above, these Requests were not served until after Plaintiffs were informed that Defendants' counsel was withdrawing as counsel, and were not received until after that motion was filed. Defendant can provide further information to the Court regarding the responses, but may only do so in an *in camera* review.

Given the timing of the issues faced by the parties in responding to the discovery requests and the meet and confer efforts, and the timing of these requests and this motion relating to the Defendant's counsel's motion to withdraw, sanctions are simply not appropriate. Plaintiffs waited almost seven weeks after the initial responses were served to send a meet and confer letter. Shortly thereafter, Plaintiffs learned that counsel for Defendants was moving the court for an order allowing them to withdraw. Despite this fact, Plaintiffs continued to aggressively pursue discovery and motion practice, and at times did not adhere to the deadlines they imposed (e.g., providing that they would not seek Court intervention until November 14th, but doing so almost seven days before). Defendant can provide the Court with further information, but may do so only in an *in camera* review. In light of all the circumstances surrounding the requests, sanctions

18

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

are not appropriate.

## VI. CONCLUSION

### A. Plaintiffs' Conclusion

Plaintiffs have repeatedly sought to have Defendant comply with its discovery obligations, and have received only delay and incomplete compliance in response. Plaintiffs are entitled to know the basis for Defendant's claims and defenses, complete their own necessary discovery, prepare for depositions and dispositive motions, and ultimately advance this case toward its natural resolution. Defendant has had plenty of time and opportunity to comply, but that compliance has not – and apparently will not – come voluntarily.

For the reasons stated herein, Plaintiffs respectfully request that this Court enter Orders granting both Motions to Compel as detailed above, as well as order corresponding sanctions.

### B. Defendant's Conclusion

Plaintiff's initial discovery requests were entirely objectionable, which is demonstrated by the amount of re-drafting and narrowing conceded by plaintiffs' counsel in their meet and confer correspondence, seven weeks later, in order to make the requests such that Defendant could respond. Furthermore, many of the responses could not be provided until a Stipulated Protective Order was in place, which took over two months to negotiate and have approved by the Court. Finally, Plaintiffs have waited until almost the close of discovery to propound any discovery let alone these significant requests on Defendant, and have done so despite knowing the Defendant's counsel was moving the Court for an order permitting them to withdraw. Despite this, Defendant has sought to respond to the discovery requests, has provided documents that it has been able to locate, and has declined to respond when the Requests are seeking information that is entirely irrelevant to the current action, and is not reasonably calculated to lead to the discovery of admissible evidence regarding Plaintiffs' breach of contract claims against Defendant. It is inapposite for Plaintiffs to claim that Defendant has had "plenty of time" to respond to the requests and the meet and confer process. Furthermore, in light of the proceedings in this case, sanctions are inappropriate and should not be awarded, even if the Court orders further responses from Defendant.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: December 10, 2012 | DOWNEY BRAND LLP |
| 3 | | |
| 4 | | By: /s/ Elizabeth B. Stallard |
| 5 | | DALE A. STERN<br>JOHN C. MCCARRON |
| 6 | | ELIZABETH B. STALLARD<br>Attorney for Plaintiffs/Counter-Defendants |
| 7 | | BYLIN HEATING SYSTEMS, INC. and ROOF ICE MELT SYSTEMS, INC. |
| 8 | | |
| 9 | DATED: December 10, 2012 | LOCKE LORD LLP |
| 10 | | |
| 11 | | By: /s/ Krista J. Dunzweiler [authorized 12/10/12] |
| 12 | | M. Taylor Florence<br>Krista J. Dunzweiler |
| 13 | | Attorneys for THERMAL TECHNOLOGIES, INC. |

1289447.4

20