IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BYLIN HEATING SYSTEMS, INC. et al.,

       Plaintiffs,           No. 2:11-cv-01402 KJM KJN

  v.

THERMAL TECHNOLOGIES, INC.,

       Defendant.         <u>ORDER</u>

      Presently pending before the court are two motions to compel filed by plaintiffs Bylin Heating Systems, Inc. ("Bylin Heating") and Roof Ice Melt Systems, Inc. (Dkt. Nos. 35, 44.) These motions seek to compel the production of documents and further responses to plaintiffs' Requests for Production, Sets One, Two, and Three; Requests for Admission, Set Two;[1] and Interrogatories, Set One, propounded on defendant Thermal Technologies, Inc. ("TTI"). Pursuant to the court's order, the parties filed their joint statement and supporting documentation regarding these motions to compel on December 10, 2012. (Dkt. No. 48.)

////

---

[1] Although the original notice of motion also raised issues with respect to Plaintiffs' Requests for Admission, Set One (dkt. no. 35), the parties did not submit any briefing regarding those discovery requests. Accordingly, the court assumes that the parties resolved their differences as to those discovery requests informally.

1

A hearing on the motions was conducted on December 20, 2012. Elizabeth Stallard appeared on behalf of plaintiffs and defendant's former counsel, Krista Dunzweiler, specially appeared on behalf of defendant.[2] Despite two express court orders, no new counsel or other representative of defendant was present at the hearing. (Dkt. No. 52.) After considering the parties' joint statement, supporting documentation, and the oral argument at the hearing, the court grants plaintiffs' motions along the terms outlined in this order.

BACKGROUND

The background facts are taken from the parties' joint statement unless otherwise indicated. Plaintiff Bylin Heating engineers and supplies commercial and residential winter freeze protection products, including heated roof panel products. Bylin Heating is the exclusive licensee of a patent for an inventive ice dam melting apparatus and system (the "858 Patent"). Various Bylin Heating products incorporate technology from the 858 Patent and are sold in conjunction with the trademarks "Roof Ice Melt Systems," "RIM," and "RIM Systems" of which Bylin Heating is also the exclusive owner. (Dkt. No. 48 at 2.)

In March 2007, Bylin Heating first sued defendant TTI for infringing on Bylin Heating's patent and trademark rights. Bylin Heating claimed that defendant was manufacturing and selling products that were infringing the 858 Patent, and was also using the domain name www.rooficemeltsystems.com in violation of Bylin Heating's trademark rights. Subsequently, in March 2009, Bylin Heating and defendant signed a settlement agreement resolving the 2007 lawsuit. The settlement agreement included various provisions and drawings regarding what would constitute a breach of that agreement. (Dkt. No. 48 at 2-3.)

Thereafter, on May 23, 2011, the instant litigation ensued. (Dkt. No. 1.) Plaintiffs allege that defendant breached the settlement agreement by manufacturing and selling certain products in violation of the settlement agreement, failing to transfer the domain name for

---

[2] The circumstances regarding defendant's former counsel's attendance at the hearing are outlined in greater detail below.

www.rooficemeltsystems.com to Bylin Heating, and continuing to use that domain name to divert customers from Bylin Heating. (Dkt. No. 48 at 3.)

Defendant denies these allegations. Defendant contends that, according to the settlement agreement, its panels would not breach the agreement if specified heating elements were used with the panel systems. According to defendant, it nevertheless voluntarily re-designed its panel systems in accordance with the drawings in the settlement agreement, and replaced old panel systems with new panel systems about six months after execution of the settlement agreement. Defendant maintains that during the brief period in 2009 when old panel systems were sold, only the specified heating elements permitted by the settlement agreement were used. Furthermore, defendant claims that it authorized and made efforts to transfer the domain name. However, because defendant did not own the domain name, plaintiffs had to contact the service provider or owner of the domain name to effectuate the transfer, and plaintiffs allegedly did not do so until after this action was filed. The domain name has since been transferred to plaintiffs. (Dkt. No. 48 at 3.) Defendant has asserted counterclaims for declaratory relief, rescission of the settlement agreement, trade libel, slander of title, defamation, unfair competition, and intentional interference with prospective economic advantage. (Dkt. No. 20.)

On April 19, 2012, the district judge entered a pretrial scheduling order requiring all fact discovery to be completed by December 21, 2012. (Dkt. No. 26.) Plaintiffs served their Requests for Production, Set One, and Interrogatories, Set One, on July 24, 2012.[3] (Dkt. No. 48 at 4.) Defendant served initial responses to these discovery requests on August 27, 2012, but did not produce any responsive documents at that time pending the negotiation, execution, and court approval of a stipulated protective order. (Id. at 4-5.) The court ultimately entered a stipulated protective order on November 15, 2012 (dkt. no. 38), and on November 29, 2012, defendant produced 104 pages of documents and served supplemental responses to the first set of

---

[3] These requests are the subject of plaintiffs' first motion to compel filed on November 8, 2012. (Dkt. No. 35.)

interrogatories, but did not serve supplemental responses to the first set of requests for production. (Dkt. No. 48 at 6.)

Additionally, on October 17, 2012, plaintiffs propounded their Requests for Production, Set Two, and on October 22, 2012, plaintiffs propounded their Requests for Production, Set Three, and Requests for Admission, Set Two. (Dkt. No. 39-1, ¶¶ 15, 18.)[4] Although there was some delay in receiving defendant's responses to these discovery requests due to mail issues, plaintiffs received responses to the Requests for Production, Set Three, and the Requests for Admission, Set Two, by November 28, 2012, and responses to the Requests for Production, Set Two, by December 4, 2012, and plaintiffs do not contend that the responses were untimely served. (Dkt. No. 48 at 7-9.) Instead, plaintiffs' motion concerns the substance of defendant's responses.

In the meantime, on October 24, 2012, defendant's counsel filed a motion to withdraw as counsel for defendant based on failure to pay outstanding attorneys' fees. (Dkt. No. 32.) On December 11, 2012, the day after the parties' joint statement was filed, the district judge extended the deadline for completion of fact discovery to February 1, 2013. (Dkt. No. 49.) Thereafter, on December 14, 2012, the district judge granted defendant's counsel's motion to withdraw and ordered defendant to appear through new counsel within 21 days. (Dkt. No. 50.)

In a previous November 30, 2012 order, in light of the then-pending motion to withdraw, the undersigned specified that if defendant's counsel was permitted to withdraw, an authorized representative of defendant must be personally present at the December 20, 2012 hearing on the discovery motions. (Dkt. No. 46.) Subsequently, on December 14, 2012, after the district judge granted the motion to withdraw, the undersigned issued a minute order again emphasizing that the December 20, 2012 hearing on the discovery motions would proceed as scheduled, and that either defendant's new counsel or an authorized representative of defendant

---

[4] These requests are the subject of plaintiffs' second motion to compel filed on November 29, 2012. (Dkt. No. 44.)

4

must be personally present at the hearing. (Dkt. No. 51.) That minute order was served on defendant via mail at defendant's address of record c/o Michael Gurr, CEO, 14807 Heritagecrest Way, Suite B, Bluffdale, UT 84055-4829.

On the morning of the December 20, 2012 hearing, defendant's former counsel, Ms. Dunzweiler, advised the undersigned's courtroom deputy that she had not received the electronic notices of the district judge's December 14, 2012 order granting the motion to withdraw and the undersigned's above-mentioned December 14, 2012 minute order due to an apparent electronic glitch, and that she had only discovered these orders the evening of December 19, 2012. Consequently, she indicated that she would specially appear at the hearing. At the hearing, Ms. Dunzweiler suggested that her former client may not have received notice of these orders, and in particular the court's order that either defendant's new counsel or an authorized representative of defendant be personally present at the hearing.

While the court appreciates Ms. Dunzweiler's appearance at the hearing, there can be little doubt that her former client was aware that it was required to have new counsel or an authorized representative present at the hearing. Defendant was initially advised of this requirement by the court's November 30, 2012 order, which preceded defendant's counsel's withdrawal and which Ms. Dunzweiler presumably provided to her client at that time. Moreover, even if Ms. Dunzweiler did not receive the subsequent December 14, 2012 minute order and thus could not pass it on to her former client, the court served that minute order and the district judge's order granting the motion to withdraw on defendant via mail at its address of record on December 14, 2012.

Nevertheless, despite defendant's failure to appear, the court considered both parties' arguments articulated in the joint statement in adjudicating these motions.

////

////

////

5

DISCUSSION

Each category of discovery requests is addressed separately.

Plaintiffs' Requests for Production, Set One

This set of document requests, originally propounded on July 24, 2012, consists of 84 requests (Request Nos. 1-84). (Dkt. No. 48 at 4; Dkt. No. 48-3, Ex. J.) Defendant served responses on August 27, 2012, but did not produce any responsive documents at that time. (Id.) In the course of the parties' meet-and-confer correspondence, they reached agreement on several issues, such as the clarification of ambiguous terms, a narrowed time scope for some requests, etc. For example, for requests nos. 1-18, plaintiffs agreed that defendant need only produce documents for the time period on or after the effective date of the previous settlement agreement (but which would include responsive documents created prior to the effective date so long as it related to an event that occurred on or after the effective date). (Dkt. No. 48 at 10.)

As noted above, defendant ultimately produced 104 pages of documents on November 29, 2012, but did not serve supplemental responses to the requests, did not provide a privilege log, and did not appear to organize the document production as the documents were kept in the usual course of business or label it to correspond to the requests pursuant to Fed. R. Civ. P. 34(b)(2)(E)(i). (Dkt. No. 48 at 6, 11.)

Plaintiffs believe that the production is incomplete for at least the following reasons: (1) although defendant's supplemental response to Interrogatory No. 4 in plaintiffs' first set of interrogatories references at least two instances where defendant had sold existing panel inventory after the settlement agreement's effective date (dkt. no. 48-3 at 42), defendant allegedly only produced documents relating to one customer/transaction; (2) defendant allegedly did not produce any marketing or training materials as sought by document request nos. 13-14, 22 (dkt. no. 48-3 at 11-12, 15); (3) defendant allegedly did not produce any organizational charts as sought by document request nos. 75-83 (even though defendant agreed to produce them subject to a protective order) (see dkt. no. 48-3 at 32-34); and (4) defendant did not produce any

6

electronically stored information - only hard copies. However, because no supplemental responses clarifying/removing previously-asserted objections were provided, no privilege log was provided, and the document production was not organized according to Fed. R. Civ. P. 34(b)(2)(E)(i), plaintiffs are unable to ascertain whether apparently missing documents have been withheld or simply do not exist. (Dkt. No. 48 at 11.)

Defendant asserts that it conducted a thorough review of its records and provided all responsive documents in its possession. Defendant further contends that the product at issue in this action was sold in 2009 for a period of about 6 months; that plaintiffs waited approximately 2 years before bringing this action; and that it is foreseeable that some documents from the sales no longer exist. (Dkt. No. 48 at 17.) This may well be the case, but plaintiffs are nevertheless entitled to clarified responses and a privilege log from which they will be able to confirm whether any documents are being withheld, and if so, on what basis.

Accordingly, the court finds it appropriate to grant plaintiffs' requested relief with respect to these discovery requests and order defendant to: (a) produce all non-privileged documents responsive to Plaintiffs' Requests for Production, Set One, Nos. 1-35, 42-71, and 75-84 (as clarified and narrowed by the parties' meet-and-confer correspondence); (b) serve supplemental responses to Plaintiffs' Requests for Production, Set One, Nos. 1-22, 28; and (c) serve a privilege log for any documents withheld on the basis of privilege or the work product doctrine, or a declaration by an appropriate person confirming that no documents were withheld on such grounds.

<u>Plaintiffs' Requests for Production, Set Two</u>

This set of documents requests, originally propounded on October 17, 2012, consists of 8 requests (Request Nos. 85-92). (Dkt. No. 39-1, ¶ 15; Dkt. No. 48-3, Ex. L.) Plaintiffs received defendant's responses to these requests on December 4, 2012. (Dkt. No. 48 at 13.) The responses to these requests raised objections as to privilege and the work product doctrine, but defendant agreed to produce non-privileged documents, to the extent that they exist,

pursuant to the protective order.  (Dkt. No. 48-3, Ex. L.)

Plaintiffs claim that they have been unable to ascertain whether any responsive documents have been produced, for example, whether some responsive documents were included in the 104-page production in response to the first set of document requests.  This difficulty is primarily because, as noted above, the 104-page production was apparently not organized pursuant to Fed. R. Civ. P. 34(b)(2)(E)(i) and no privilege log was provided.  (Dkt. No. 48 at 13.)  In response, defendant primarily states that it is continuing to review its records and will provide documents "if and when they are located." (Dkt. No. 48 at 18.)

For the same reasons outlined above, the court finds it appropriate to grant plaintiffs' requested relief with respect to these discovery requests and order defendant to: (a) produce any non-privileged documents responsive to Plaintiffs' Requests for Production, Set Two, Nos. 85-92; and (b) serve a privilege log for any documents withheld on the basis of privilege or the work product doctrine, or a declaration by an appropriate person confirming that no documents were withheld on such grounds.

Plaintiffs' Interrogatories, Set One

This set of interrogatories, originally propounded on July 24, 2012, consists of 25 interrogatories.  (Dkt. No. 48 at 4; Dkt. No. 48-3, Ex. K.)  Defendant served its supplemental responses on November 29, 2012.  (Dkt. No. 48-3, Ex. K.)  The only interrogatory at issue here is Interrogatory No. 23, which requests defendant to identify all persons from whom defendant purchased cable or hydronic tubing between March 2009 and the present.  (Dkt. No. 48-3 at 58.)  Defendant responded that its supplier information was confidential and proprietary, but that the information would be disclosed following the parties' stipulation to a protective order.  (Id.)

Given that a stipulated protective order was entered on November 15, 2012 (dkt. no. 38), about two weeks prior to defendant's supplemental responses were served, plaintiffs argue that defendant should be required to amend its response to provide responsive information.  (Dkt. No. 48 at 12-13.)  The court agrees, and, in any event, defendant does not substantively

address this issue in its portion of the joint statement. (Dkt. No. 48 at 17.)

Accordingly, the court finds it appropriate to grant plaintiffs' requested relief and order defendant to serve a supplemental response to Interrogatory No. 23 that provides responsive information.

<u>Plaintiffs' Requests for Admission, Set Two and Requests for Production, Set Three</u>

According to a declaration filed by one of plaintiffs' counsel, Courtland Chillingsworth, he discovered on October 18, 2012 that Michael Gurr, defendant's President, may have shifted defendant's operations to a new company, Engineered Roof De-Icing, Inc. ("ERDI"). (Declaration of Courtland C. Chillingsworth, Dkt. No. 39-1, ¶ 17.) When plaintiffs' counsel attempted to access defendant's website, he was apparently redirected to a website for ERDI. (<u>Id.</u>) Organizational documents for ERDI indicate that Heather Gurr, Michael Gurr's wife, registered ERDI with the State of Utah in September 2012. (Declaration of Elizabeth B. Stallard, Dkt. No. 48-1, ¶ 16, Ex. H.)

Consequently, on October 22, 2012, plaintiffs propounded Plaintiffs' Requests for Admission, Set Two (consisting of Request Nos. 15-43) and Plaintiffs' Requests for Production, Set Three (consisting of Request Nos. 93-138). (Dkt. No. 39-1, ¶ 18; Dkt. No. 48-3, Exs. M, N.) Plaintiff's Requests for Admission, Set Two were primarily targeted at defendant's relationship with ERDI and ERDI's activities (such as basic facts about each entity, the relationship between the entities' officers and employees, the ownership and transfer of domain names between defendant and ERDI, and the transfer of assets between defendant and ERDI). (Dkt. No. 48-3, Ex. M.) Plaintiffs' Requests for Production, Set Three elicited similar information, requesting documents that supported denials of the accompanying second set of requests for admission, as well as document requests that directly pertained to the above-mentioned subject matter. (<u>Id.</u>, Ex. N.)

////

9

Defendant refused to substantively respond to these requests. Apart from asserting the attorney-client privilege, the work product doctrine, and a few other form objections, defendant primarily claimed that each request was not relevant to the action, nor reasonably calculated to lead to the discovery of admissible evidence. Defendant stated that the subject matter of the requests would not aid plaintiffs in establishing whether defendant sold products in violation of the settlement agreement and/or in defending against the claims asserted against plaintiffs by defendant. (Dkt. No. 48-3, Exs. M, N.) In the joint statement, defendant elaborated on its argument somewhat, stating that the requests are inappropriate, because they seek information relating to a non-party entity, or relationships between non-party individuals and a non-party entity. (Dkt. No. 48 at 18.)

Plaintiffs claim that they are entitled to the requested information under the applicable discovery standard. Generally, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Plaintiffs contend that the information sought is reasonably calculated to lead to the discovery of admissible evidence, because the evidence uncovered thus far suggests that defendant's operations and customers are either being transferred to ERDI or that the two entities are operating in concert. Plaintiffs reason that if ERDI is a separate entity in name only, its conduct would be just as relevant to proving plaintiffs' claims, and disproving defendant's affirmative defenses, as defendant's own conduct. In that regard, plaintiff points out that defendant specifically asserted an affirmative defense indicating that any actual harm to plaintiffs was caused by "independent, non-affiliated persons who were not acting on behalf of, or within

the course and scope of any relationship with [defendant]." (Dkt. No. 20 at 5.) As such, plaintiffs claim that the relationship between defendant and ERDI is at the center of the dispute, and that they are entitled to discover whether defendant's and ERDI's actions are part of a concerted effort to frustrate plaintiffs' ability to prove their claims and/or their ability to collect on a potential judgment. Plaintiffs further posit that defendant's wholesale refusal to respond to the discovery requests, including a refusal to even admit that Michael Gurr is an officer of defendant as alleged in defendant's counterclaims (compare Request for Admission No. 15, Dkt. No. 48-3 at 75 with Counterclaims, Dkt. No. 20, ¶ 53), suggests that defendant is hiding something.

Given the showing made by plaintiff regarding the circumstances surrounding ERDI's formation and the re-direction of defendant's customers to ERDI, it seems clear that the subject matter of these requests is relevant to plaintiff's claims. Moreover, even if it were not strictly relevant to plaintiff's claims, good cause exists to order such discovery as relevant to the subject matter involved in the action. Accordingly, the court finds it appropriate to grant plaintiffs' requested relief with respect to these discovery requests and order defendant to: (a) serve supplemental responses to Plaintiffs' Requests for Admission, Set Two so as to provide responsive information to these requests; (b) serve supplemental responses to Plaintiffs' Requests for Production, Set Three and produce any non-privileged responsive documents; and (c) serve a privilege log for any documents withheld on the basis of privilege or the work product doctrine, or a declaration by an appropriate person confirming that no documents were withheld on such grounds.

<u>Deadline for Serving Supplemental Responses, Supplemental Document Productions, Privilege Logs, and Verifications</u>

As noted above, on December 14, 2012, the district judge ordered defendant to appear through new counsel within 21 days of that order, i.e., by January 4, 2013. Accordingly, defendant is ordered to serve all supplemental responses, supplemental document productions,

11

and privilege logs on plaintiffs no later than January 7, 2013.[5]  Furthermore, in light of plaintiffs' assertion that verifications for written discovery responses have not yet been provided, any outstanding verifications shall also be provided no later than January 7, 2013.

### Sanctions

Plaintiffs' request for discovery sanctions is taken under advisement.  Defendant is cautioned that failure to comply with this court's order and failure to otherwise cooperate with the discovery process will result in the imposition of increasing sanctions, including plaintiffs' counsel's costs and fees for securing present and future compliance with discovery obligations and for defendant's failure to appear at the hearing on these motions.

### CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

1. Plaintiffs' motions to compel (dkt. no. 35, 44) are GRANTED along the terms outlined in this order.

2. Defendant shall serve all supplemental responses, supplemental document productions, privilege logs, and outstanding verifications, in accordance with this order, on plaintiffs no later than January 7, 2013.

IT IS SO ORDERED.

DATED:  December 20, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[5] In the event that new counsel for defendant appears and requires some additional time to provide the supplemental responses, document productions, and privilege logs, the court will consider a stipulation by the parties for a reasonable extension of that deadline.  The parties are cautioned, however, that the undersigned's ability to extend this deadline, even for good cause, is constrained by the current fact discovery completion deadline of February 1, 2013.  (Dkt. No. 49.)  The undersigned cannot unilaterally alter the fact discovery completion deadline or other pre-trial scheduling deadlines in this matter, and relief from such deadlines should be sought from the district judge if necessary.