1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BYLIN HEATING SYSTEMS, INC.
     et al.,
11
                   Plaintiffs,                    No. 2:11-cv-1402 KJM KJN
12
          v.
13
     THERMAL TECHNOLOGIES, INC.,
14
                   Defendant.                     ORDER AND
15                                                FINDINGS AND RECOMMENDATIONS
     _____/
16

17              Presently pending before the undersigned is a motion for discovery sanctions filed

18   by plaintiffs Bylin Heating Systems, Inc. ("Bylin Heating") and Roof Ice Melt Systems, Inc.

19   (collectively "plaintiffs") (Dkt. No. 54). Plaintiffs request that the court impose terminating

20   sanctions against defendant Thermal Technologies, Inc. ("TTI") based on its failure to comply

21   with this court's previous order regarding discovery, several other court orders, and its discovery

22   obligations in general. (Id.) Defendant TTI has not filed any response to the motion.

23              A hearing on the motion was conducted on February 28, 2013. (Dkt. No. 56.)

24   Elizabeth Stallard appeared on behalf of plaintiffs and no appearance was made on behalf of

25   defendant TTI. After considering plaintiffs' briefing and supporting documentation, the oral

26   argument at the hearing, and other appropriate portions of the record, the undersigned

                                                    1

1    recommends that plaintiffs' motion be granted in part along the terms outlined in this order and

2    findings and recommendations.

3    BACKGROUND

4                    The Origins of this Litigation

5                    The background facts are taken from the parties' joint statement previously filed

6    in connection with plaintiffs' motions to compel, unless otherwise indicated.  (See Dkt. No. 48.)[1]

7    Plaintiff Bylin Heating engineers and supplies commercial and residential winter freeze

8    protection products, including heated roof panel products.  Bylin Heating is the exclusive

9    licensee of a patent for an inventive ice dam melting apparatus and system (the "858 Patent").

10   Various Bylin Heating products incorporate technology from the 858 Patent and are sold in

11   conjunction with the trademarks "Roof Ice Melt Systems," "RIM," and "RIM Systems," of which

12   Bylin Heating is also the exclusive owner.  (Dkt. No. 48 at 2.)

13                   In March 2007, Bylin Heating first sued defendant TTI for allegedly infringing on

14   Bylin Heating's patent and trademark rights.  Bylin Heating claimed that defendant was

15   manufacturing and selling products that infringed the 858 Patent, and was also using the domain

16   name www.rooficemeltsystems.com in violation of Bylin Heating's trademark rights.

17   Subsequently, in March 2009, Bylin Heating and defendant TTI signed a settlement agreement

18   resolving the 2007 lawsuit.  The settlement agreement included various provisions and drawings

19   regarding what would constitute a breach of that agreement.  (Dkt. No. 48 at 2-3.)

20                   Thereafter, on May 23, 2011, the instant litigation ensued.  (Dkt. No. 1.)

21   Plaintiffs primarily allege that defendant TTI breached the settlement agreement by

22   manufacturing and selling certain products in violation of the settlement agreement, failing to

23   transfer the domain name www.rooficemeltsystems.com to Bylin Heating, and continuing to use

24

25          [1] The court primarily draws from this document for its summary of the background facts,
     because the document was filed jointly by plaintiffs and defendant, and contains each party's
26   characterization of the dispute.

1   that domain name to divert customers from Bylin Heating.  (Dkt. No. 48 at 3; <u>see also</u> Second

2   Amended Complaint, Dkt. Nos. 15, 16.)

3                As set forth in the parties' joint statement, defendant TTI denies these allegations.

4   Defendant contends that, according to the settlement agreement, its panels would not breach the

5   agreement if specified heating elements were used with the panel systems.  According to

6   defendant, it nevertheless voluntarily re-designed its panel systems in accordance with the

7   drawings in the settlement agreement, and replaced old panel systems with new panel systems

8   about six months after execution of the settlement agreement.  Defendant maintains that during

9   the brief period in 2009 when old panel systems were sold, only the specified heating elements

10   permitted by the settlement agreement were used.  Furthermore, defendant claims that it

11   authorized and made efforts to transfer the domain name.  However, because defendant did not

12   own the domain name, plaintiffs had to contact the service provider or owner of the domain

13   name to effectuate the transfer, and plaintiffs allegedly did not do so until after this action was

14   filed.  According to defendant, the domain name has since been transferred to plaintiffs.  (Dkt.

15   No. 48 at 3.)  Defendant asserted counterclaims for declaratory relief, rescission of the settlement

16   agreement, trade libel, slander of title, defamation, unfair competition, and intentional

17   interference with prospective economic advantage.  (Dkt. No. 20.)

18              <u>Procedural History of the Instant Litigation and the Parties' Discovery Disputes</u>

19                On April 19, 2012, the district judge entered a pretrial scheduling order requiring

20   all fact discovery to be completed by December 21, 2012.  (Dkt. No. 26.)

21                Plaintiffs served their Requests for Production, Set One; Requests for Admission,

22   Set One; and Interrogatories, Set One, on July 24, 2012.  (Dkt. No. 48 at 4.)  Defendant served

23   initial responses to these discovery requests on August 27, 2012, but did not produce any

24   responsive documents at that time pending the negotiation, execution, and court approval of a

25   stipulated protective order.  (<u>Id.</u> at 4-5.)  On November 8, 2012, plaintiffs filed their first motion

26   to compel, which pertained to these discovery requests.  (Dkt. No. 35.)  The court ultimately

1   entered a stipulated protective order on November 15, 2012 (dkt. no. 38), and on November 29,

2   2012, defendant produced 104 pages of documents and served supplemental responses to the

3   Interrogatories, Set One, and Requests for Admission, Set One, but did not serve supplemental

4   responses to the Requests for Production, Set One.  (Dkt. No. 48 at 6.)  By the time that the

5   parties submitted their joint statement regarding their discovery dispute on December 10, 2012,

6   the primary issues remaining with respect to the above-mentioned discovery requests were that

7   (a) defendant's document production appeared to be incomplete for several reasons; (b)

8   defendant had failed to provide a privilege log and supplemental responses to the Requests for

9   Production, Set One, clarifying whether any documents were still withheld; and (c) defendant had

10  failed to substantively respond to one interrogatory on the grounds that the requested information

11  was confidential and proprietary, despite the fact that a protective order had been entered.  (Dkt.

12  No. 48 at 11-13.)

13          Additionally, on October 17, 2012, plaintiffs propounded their Requests for

14  Production, Set Two, and on October 22, 2012, plaintiffs propounded their Requests for

15  Production, Set Three, and Requests for Admission, Set Two.  (Dkt. No. 39-1, ¶¶ 15, 18.)

16  Thereafter, on November 29, 2012, plaintiffs filed their second motion to compel, which

17  pertained to these discovery requests.  (Dkt. No. 44.)  Similar to the issues raised with respect to

18  plaintiffs' Requests for Production, Set One, plaintiffs complained that they were unable to

19  ascertain whether defendant's production in response to plaintiffs' Requests for Production, Set

20  Two, was complete, because no privilege log had been provided, and the documents that had

21  been produced were ostensibly not organized as they were kept in the usual course of business or

22  by category of request pursuant to Rule 34(b)(2)(E)(i) of the Federal Rules of Civil Procedure.

23  (Dkt. No. 48 at 13.)

24          The issues regarding defendant's responses to plaintiffs' Requests for Admission,

25  Set Two, and Requests for Production, Set Three, were somewhat different.  According to a

26  declaration filed by plaintiffs' counsel, he discovered on October 18, 2012, that Michael Gurr,

4

1    defendant's president/CEO, may have shifted defendant's operations to a new company,

2    Engineered Roof De-Icing, Inc. ("ERDI").  (Declaration of Courtland C. Chillingsworth, Dkt.

3    No. 39-1, ¶ 17.)  When plaintiffs' counsel attempted to access defendant's website, he was

4    apparently redirected to a website for ERDI.  (Id.)  Organizational documents for ERDI also

5    indicated that Heather Gurr, Michael Gurr's wife, registered ERDI with the State of Utah in

6    September 2012.  (Declaration of Elizabeth B. Stallard, Dkt. No. 48-1, ¶ 16, Ex. H.)

7            Based on the foregoing, plaintiffs became concerned that defendant TTI's

8    operations and customers were being transferred to ERDI in a concerted effort to frustrate

9    plaintiffs' ability to prove their claims and/or collect on a potential judgment against defendant

10   TTI.  (Dkt. No. 48 at 14-15.)  Thus, plaintiffs' Requests for Admission, Set Two, were primarily

11   targeted at defendant's relationship with ERDI and ERDI's activities (such as basic facts about

12   each entity, the relationship between the entities' officers and employees, the ownership and

13   transfer of domain names between defendant and ERDI, and the transfer of assets between

14   defendant and ERDI).  (Dkt. No. 48-3, Ex. M.)  Plaintiffs' Requests for Production, Set Three,

15   elicited similar information, requesting documents that supported any denials of the

16   accompanying Requests for Admission, Set Two, as well as document requests that directly

17   pertained to the above-mentioned subject matter.  (Id., Ex. N.)

18           Defendant refused to substantively respond to these discovery requests.  Apart

19   from asserting the attorney-client privilege, the work product doctrine, and a few other form

20   objections, defendant primarily asserted that each request was not relevant to the action, nor

21   reasonably calculated to lead to the discovery of admissible evidence.  (Dkt. No. 48-3, Exs. M,

22   N.)

23           In the meantime, while the discovery disputes were ongoing, on October 24, 2012,

24   defendant's counsel, Krista Dunzweiler and M. Taylor Florence of Locke Lord LLP, filed a

25   motion to withdraw as counsel for defendant based on failure to pay outstanding attorneys' fees.

26   (Dkt. No. 32.)  Subsequently, on December 11, 2012, the day after the parties' joint statement

5

regarding the discovery motions was filed, the district judge extended the deadline for completion of fact discovery to the deadline of February 1, 2013. (Dkt. No. 49.) Thereafter, on December 14, 2012, the district judge granted defendant's counsel's motion to withdraw and ordered defendant to appear through new counsel within 21 days, i.e., by January 4, 2013. (Dkt. No. 50.)

In a previous November 30, 2012 order, in light of the then-pending motion to withdraw, the undersigned specified that if defendant's counsel were permitted to withdraw, an authorized representative of defendant had to be personally present at the December 20, 2012 hearing on the discovery motions. (Dkt. No. 46.) Subsequently, on December 14, 2012, after the district judge granted the motion to withdraw, the undersigned issued a minute order again emphasizing that the December 20, 2012 hearing on the discovery motions would proceed as scheduled, and that either defendant's new counsel or an authorized representative of defendant must be personally present at the hearing. (Dkt. No. 51.) That minute order was served on defendant via mail at defendant's address of record, c/o Michael Gurr, CEO, 14807 Heritagecrest Way, Suite B, Bluffdale, UT 84055-4829.

Neither new counsel for defendant nor an authorized representative of defendant appeared at the December 20, 2012 hearing on plaintiffs' motions to compel. (Dkt. No. 52.) However, out of abundance of caution, defendant's former counsel, Krista Dunzweiler, specially appeared at the hearing, stating that she had not received the electronic notices of the district judge's December 14, 2012 order granting the motion to withdraw and the undersigned's above-mentioned December 14, 2012 minute order due to the fact that she had apparently been prematurely taken off the service list, and that she had only learned of the orders' existence the previous evening. She also charitably suggested that defendant may not have received notice of these orders.

Nevertheless, although the court was appreciative of Ms. Dunzweiler's special appearance, there was little doubt that defendant knew that it was required to have new counsel

1  or an authorized representative present at the hearing on the motions to compel.  As the court

2  explained at the hearing, defendant was initially advised of this requirement by the court's

3  November 30, 2012 order, which preceded defendant's counsel's withdrawal and which Ms.

4  Dunzweiler presumably provided to her client at that time.  Moreover, even though Ms.

5  Dunzweiler did not receive the subsequent December 14, 2012 minute order and thus could not

6  have passed it on to her former client, the court served that minute order and the district judge's

7  order granting the motion to withdraw on defendant via mail at its address of record on

8  December 14, 2012.  Thus, defendant had more than sufficient notice that its appearance at the

9  hearing was required.

10         Despite defendant's essential failure to appear in compliance with the court's

11  order, the court nonetheless considered both parties' arguments articulated in the joint statement

12  regarding the discovery disagreement.  On December 21, 2012, the court substantially granted

13  plaintiffs' motions to compel, and for the reasons outlined in that order, required defendant to

14  serve supplemental responses, supplemental document productions, privilege logs, and any

15  outstanding verifications no later than January 7, 2013.  (Dkt. No. 53.)  The court noted that if

16  new counsel for defendant appeared and required some additional time to provide these

17  materials, the court would consider a stipulation by the parties for a reasonable extension of the

18  January 7, 2013 deadline.  (Id.)  The court declined to impose sanctions at the time and instead

19  took plaintiffs' request for sanctions under advisement, cautioning defendant that sanctions

20  would be imposed for failure to comply with the court's order and failure to otherwise cooperate

21  with the discovery process.  (Id.)  The court's December 21, 2012 order was served on defendant

22  that same day via mail at its address of record.  Plaintiffs' counsel also forwarded a courtesy copy

23  of the order to defendant's former counsel on December 21, 2012.  (Dkt. No. 54-2, Ex. A.)

24         On February 8, 2013, plaintiffs filed the instant motion for discovery sanctions.

25  (Dkt. No. 54.)  According to plaintiffs, hours after the undersigned issued the order granting

26  plaintiffs' motions to compel on December 21, 2012, plaintiffs' counsel received an e-mail from

7

1   defendant's CEO, Michael Gurr, instructing plaintiffs that all correspondence regarding the

2   litigation should be directed to an attorney named David M. Wahlquist with the firm of Kirton &

3   McConkie in Salt Lake City, Utah.  (Dkt. No. 54-2, Ex. B.)  The e-mail added that TTI was

4   closed on September 30, 2012, and that Mr. Gurr himself had filed for Chapter 7 bankruptcy.

5   (Id.)  Thereafter, on December 25, 2012, plaintiffs' counsel sent a letter to Mr. Wahlquist,

6   requesting Mr. Wahlquist to confirm that he would be representing defendant in this matter and

7   advising him of the district judge's deadline for an appearance by new counsel and the

8   undersigned's order on plaintiffs' motions to compel, which plaintiffs' counsel attached to the

9   letter.  (Id. Ex. C.)  Plaintiffs' counsel represents that she did not receive any response from Mr.

10  Wahlquist and that, to date, neither defendant nor any attorney purporting to act on behalf of

11  defendant has provided any supplemental responses or documents in accordance with the court's

12  order, or requested an extension to do so.  (Id. ¶¶ 5-6; see also Dkt. Nos. 55, 55-1.)

13          In their motion for discovery sanctions, plaintiffs argue that terminating sanctions

14  are warranted, because defendant's refusal to cooperate in the discovery process has frustrated

15  plaintiffs' ability to establish their claims, learn the scope of defendant's alleged misconduct, and

16  ascertain the extent of plaintiffs' damages.  Plaintiffs state that, in addition to defendant's failure

17  to comply with the discovery rules and procedure, defendant also failed to comply with the

18  court's order compelling discovery, failed to appear at noticed court hearings, and failed to

19  appear via new counsel as ordered by the district judge.  Simultaneously, defendant has

20  purportedly been transferring its operations and assets to ERDI in a further attempt to prevent

21  plaintiffs from obtaining any relief for defendant's alleged misconduct and render itself judgment

22  proof.

23  DISCUSSION

24                  Defendant's Failure to Appear Through New Counsel

25          Before turning to plaintiffs' motion for discovery sanctions, the undersigned notes

26  that, despite the district judge's deadline of January 4, 2013, for defendant's new counsel to

8

1    appear (dkt. no. 50), no new counsel has yet filed a notice of appearance.  Defendant, as a

2    corporation, cannot appear in federal court without an attorney.  <u>Rowland v. California Men's</u>

3    <u>Colony</u>, 506 U.S. 194, 202 (1993) (holding that corporations, partnerships, or associations may

4    not appear in federal court otherwise than through a licensed attorney).  Therefore, on this basis

5    alone, defendant's answer and counterclaims should be stricken.

6              This recommendation is particularly appropriate in light of the fact that defendant

7    was provided with an adequate opportunity to obtain new counsel and has not made any efforts to

8    seek an extension of the deadline to obtain new counsel from the court.  Furthermore, as noted

9    above, even if defendant's former counsel did not receive the district judge's December 14, 2012

10   order granting the motion to withdraw and setting a deadline by which to obtain new counsel, the

11   order was served on defendant itself that same day via mail at defendant's address of record.

12   Thus, defendant had sufficient notice of the deadline by which to obtain new counsel.

13              <u>Plaintiffs' Motion for Discovery Sanctions</u>

14              In the alternative, the undersigned also proceeds to consider plaintiffs' motion for

15   discovery sanctions.  In particular, plaintiffs request terminating sanctions (under either Federal

16   Rule of Civil Procedure 37 or the court's "inherent power") as well as monetary sanctions

17   (attorneys' fees and costs).

18              In regards to a party's failure to obey a court's discovery order, Federal Rule of

19   Civil Procedure 37(b)(2) provides, in relevant part:

20        **(2)** ***Sanctions in the District Where the Action Is Pending.***

21        **(A)** *For Not Obeying a Discovery Order.*  If a party or a party's
          officer, director, or managing agent . . . fails to obey an order to
22        provide or permit discovery . . . , the court where the action is
          pending may issue further just orders.  They may include the
23        following:

24              (i) directing that the matters embraced in the order or other
              designated facts be taken as established for purposes of the
25              action, as the prevailing party claims;

26              (ii) prohibiting the disobedient party from supporting or

                                          9

1  opposing designated claims or defenses, or from
   introducing designated matters in evidence;

2

3  (iii) striking pleadings in whole or in part;

4

5  (iv) staying further proceedings until the order is obeyed;

6  (v) dismissing the action or proceeding in whole or in part;

7  (vi) rendering a default judgment against the disobedient
   party; or

8  (vii) treating as contempt of court the failure to obey any
   order except an order to submit to a physical or mental
   examination.

9  . . .

10  **(C)** *Payment of Expenses.*  Instead of or in addition to the orders
   above, the court must order the disobedient party, the attorney
11  advising that party, or both to pay the reasonable expenses,
   including attorney's fees, caused by the failure, unless the failure
12  was substantially justified or other circumstances make an award of
   expenses unjust.

13

14      As the Ninth Circuit Court of Appeals has observed, "[a] terminating sanction,

15  whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe,"

16  and "[o]nly willfulness, bad faith, and fault justify terminating sanctions."  Conn. Gen. Life Ins.

17  Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007); see also Leon v. IDX

18  Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006) (describing the sanction of dismissal as "harsh");

19  Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1115 (9th Cir. 2004) (per curiam) (stating

20  that where "the drastic sanctions of dismissal or default are imposed, . . . the range of discretion

21  is narrowed and the losing party's noncompliance must be due to willfulness, fault, or bad

22  faith").

23      The court considers five factors in evaluating whether a case-dispositive sanction

24  imposed pursuant to Federal Rule of Civil Procedure 37(b)(2) is justified: "(1) the public's

25  interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the

26  risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases

on their merits; and (5) the availability of less drastic sanctions." <u>Conn. Gen. Life Ins. Co.</u>, 482

F.3d at 1096; <u>accord</u> <u>Computer Task Group, Inc.</u>, 364 F.3d at 1115.  As to the fifth factor, the

court further considers "whether the court has considered lesser sanctions, whether it tried them,

and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions."

<u>Conn. Gen. Life Ins. Co.</u>, 482 F.3d at 1096; <u>accord</u> <u>Leon</u>, 464 F.3d at 960.  The Ninth Circuit

Court of Appeals has stated that this multi-factor test is "not mechanical," <u>Conn. Gen. Life Ins.</u>

<u>Co.</u>, 482 F.3d at 1096, and the court "need not make explicit findings regarding each of these

factors," <u>Leon</u>, 464 F.3d at 958.  Rather, the test "provides the district court with a way to think

about what to do, not a set of conditions precedent for sanctions or a script that the district court

must follow." <u>Conn. Gen. Life Ins. Co.</u>, 482 F.3d at 1096.  "What is most critical for case-

dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether

discovery violations threaten to interfere with the rightful decision of the case." <u>Id.</u> at 1097.

       Courts may also impose sanctions, including terminating sanctions, as part of their

inherent power "to manage their own affairs so as to achieve the orderly and expeditious

disposition of cases." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991).  The Ninth Circuit has

held that the same five-factor test utilized in the context of Rule 37 sanctions applies when

considering sanctions under the court's "inherent power." <u>Leon</u>, 464 F.3d at 958 n.4.

       An evaluation of the above-mentioned five factors suggests that terminating

sanctions in this case are appropriate.  Factors One and Two (the public's interest in expeditious

resolution of litigation and the court's need to manage its dockets) strongly militate in favor of

terminating sanctions, because defendant's refusal to comply with its discovery obligations, even

when ordered to do so by the court, has delayed resolution of the action and consumed scarce

judicial time and resources.

       The third factor (the risk of prejudice to the party seeking sanctions) likewise

counsels that terminating sanctions are appropriate.  While delay alone has been held to be

insufficient prejudice to support terminating sanctions, "[f]ailure to produce documents as

1    ordered, however, is considered sufficient prejudice." <u>Adriana Int'l Corp. v. Thoeren</u>, 913 F.2d

2    1406, 1412 (9th Cir. 1990).  Here, although the February 1, 2013 deadline for completion of fact

3    discovery has now passed and a pretrial conference and trial are set for June 6, 2013 and July 8,

4    2013, respectively (dkt. no. 49), plaintiffs still have not received compliant responses to their

5    written discovery requests, which relate to the extent of defendant's breach of the settlement

6    agreement and plaintiffs' potential damages.  Thus, defendant's failure to respond to the

7    discovery has significantly hampered plaintiffs' ability to prove their claims and defend against

8    defendant's counterclaims.  It therefore impairs plaintiffs' ability to go to trial and threatens to

9    interfere with the rightful decision of the case.  <u>Adriana Int'l Corp.</u>, 913 F.2d at 1412; <u>see</u> <u>also</u>

10   <u>Leon</u>, 464 F.3d at 959 (prejudice results when a party's refusal to provide documents forces the

11   other party to rely on incomplete and spotty evidence at trial).

12         With respect to the fifth factor (the availability of less drastic sanctions), the court

13   finds that less drastic sanctions would not be effective.  Apart from defendant's dilatory

14   discovery conduct, defendant has failed to comply with the undersigned's order compelling

15   supplemental discovery responses, failed to comply with the district judge's order to obtain new

16   counsel, failed to appear at noticed hearings, and failed to oppose plaintiffs' motion for discovery

17   sanctions, despite having been appropriately notified of these orders, hearings, and motions.  It

18   appears that defendant has opted to simply ignore the court's orders, and its conduct is indicative

19   of willfulness and bad faith.  This conclusion is reinforced by defendant's continued refusal to

20   substantively respond to discovery requests regarding defendant's alleged transfer of assets and

21   operations to ERDI (a company registered by the wife of defendant's CEO), which plaintiffs

22   suspect may have been done in an attempt to insulate defendant from any potential judgment.

23   <u>See</u> <u>Anheuser-Busch, Inc. v. Natural Beverage Distributors</u>, 69 F.3d 337, 352 (9th Cir. 1995) ("It

24   is appropriate to reject lesser sanctions where the court anticipates continued deceptive

25   misconduct").

26   ////

12

1       Turning to potential alternative sanctions, in light of defendant's failure to appear

2 at hearings and comply with the court's previous orders, as well as defendant's closing and

3 purported transfer of assets and operations to ERDI, the court has little confidence that defendant

4 would pay monetary sanctions if it were imposed.  Also, an evidence preclusion sanction or an

5 instruction regarding a presumption in favor of plaintiffs would not cure the prejudice resulting

6 from plaintiffs' inability to obtain from defendant the evidence needed to support plaintiffs'

7 claims and alleged damages.  Furthermore, although the court did not explicitly warn defendant

8 regarding the potential for terminating sanctions, the Ninth Circuit has stated than "an explicit

9 warning is not always necessary."  Anheuser-Busch, Inc., 69 F.3d at 353.  In this case, the court's

10 order granting plaintiffs' motions to compel warned defendant that sanctions would be imposed

11 if defendant failed to comply with that order and its discovery obligations in this matter.

12 Additionally, plaintiffs' subsequent motion for discovery sanctions provided defendant with

13 sufficient notice that terminating sanctions would be considered, and defendant failed to even

14 respond to that motion in writing or appear at the hearing.  Indeed, defendant can hardly claim to

15 be surprised by the imposition of terminating sanctions when it failed to abide by its discovery

16 obligations, failed to follow several court orders, and failed to appear at noticed hearings.

17 Therefore, the fifth factor also militates in favor of terminating sanctions.

18       Finally, the fourth factor (the public policy favoring disposition of cases on their

19 merits) is outweighed by the other factors.  In fact, even the policy favoring disposition of cases

20 on their merits lends little support to defendant, because defendant's refusal to cooperate in

21 discovery and comply with the court's orders obstructed resolution of the case on its merits.  In re

22 Exxon Valdez, 102 F.3d 429, 433 (9th Cir. 1996).

23       Accordingly, after a careful evaluation of all the relevant factors, and finding

24 defendant's noncompliance to be the result of willfulness, fault, and/or bad faith, the undersigned

25 concludes that terminating sanctions under Rule 37 and/or the court's inherent power are

26 ////

1  warranted.[2]

2  CONCLUSION

3        Therefore, in light of defendant's failure, as a corporation, to appear through new

4  counsel, the undersigned finds it appropriate to recommend that defendant's answer and

5  counterclaims be stricken, and that the Clerk of Court be directed to enter defendant's default.

6  Alternatively, the undersigned recommends that such relief be granted pursuant to Federal Rule

7  of Civil Procedure 37 or the court's inherent power, based on defendant's failure to comply with

8  the court's discovery order and its discovery obligations generally.

9        Plaintiffs' motion requests the entry of a default judgment, but plaintiffs have not

10  provided appropriate briefing and evidence in support of such a request.  Plaintiffs' motion also

11  does not provide a proposed judgment or otherwise address the terms on which such a judgment

12  should be entered.  Therefore, plaintiffs' request for a default judgment at this juncture is

13  premature.  However, if the district judge adopts the findings and recommendations, strikes

14  defendant's answer and counterclaims, and directs the Clerk of Court to enter defendant's

15  default, plaintiffs may thereafter file a properly supported motion for default judgment.

16        Plaintiffs also request that they be awarded monetary sanctions pursuant to Rule

17  37, i.e., their costs and attorneys' fees with respect to this motion and their prior efforts in

18  pursuing defendant's compliance with discovery, including the two prior motions to compel.

19  However, plaintiffs do not request any particular amount of monetary sanctions and have not

20  submitted any declarations and supporting documentation regarding their fees and costs, merely

21  indicating that it would be "subject to proof."  As such, the court is unable to address plaintiffs'

22  request at this time.  Nevertheless, plaintiffs may pursue such a request either as part of any

23  subsequent motion for default judgment or by a separate supported motion, as appropriate.

24  ////

25
26        [2] As discussed below, the undersigned concludes that the appropriate sanction is to strike
the answer and counterclaim, with plaintiffs to file a subsequent motion for default judgment.

14

1    Accordingly, for the reasons outlined above, IT IS HEREBY RECOMMENDED

2  that:

3    1.  Plaintiffs' motion for discovery sanctions (dkt. no. 54) be GRANTED IN

4  PART along the terms outlined in this order and findings and recommendations.

5    2.  Defendant TTI's answer and counterclaims (dkt. no. 20) be STRICKEN.

6    3.  The Clerk of Court be directed to enter defendant TTI's default.

7    IT IS ALSO HEREBY ORDERED that:

8    1.  All scheduled dates in this matter are VACATED.

9    2.  Within 30 days after the district judge adopts these findings and

10  recommendations, if they are adopted, plaintiffs shall either file a motion for default judgment

11  before the undersigned, or file a statement indicating how plaintiffs would like to otherwise

12  proceed with the action.  Such a statement should include any request for the scheduling of

13  additional appropriate proceedings.

14    IT IS SO RECOMMENDED AND ORDERED.

15    These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

17  (14) days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served on all parties and filed with the court within fourteen (14) days after service of the

21  objections.  The parties are advised that failure to file objections within the specified time may

22  waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

23  Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

24  DATE:  February 28, 2013

25  _____
    KENDALL J. NEWMAN

26  UNITED STATES MAGISTRATE JUDGE

15