UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYLIN HEATING SYSTEMS, INC., et al., | No. 2:11-cv-1402 KJM KJN |
| Plaintiffs, | |
| v. | ORDER |
| THERMAL TECHNOLOGIES, INC. | |
| Defendant. | |

INTRODUCTION

    Presently pending before the court is plaintiffs Bylin Heating Systems, Inc. ("Bylin") and Roof Ice Melt Systems, Inc.'s (collectively "plaintiffs") motion for attorneys' fees and costs as sanctions for bad faith conduct by defendant Thermal Technologies, Inc. ("TTI"). (ECF No. 64.) The motion, filed on December 31, 2013, was originally noticed for a hearing on February 6, 2014. (Id.) On January 30, 2014, after defendant failed to file an opposition to plaintiffs' motion fourteen (14) days prior to the hearing in accordance with Local Rule 230(c), the court vacated the hearing and submitted the matter on the briefing and record pursuant to Local Rule 230(g). (ECF No. 65.) Nevertheless, out of an abundance of caution, the court also granted defendant an additional opportunity to file an opposition or statement of non-opposition to the motion on or before February 13, 2014. (Id.) Defendant was "strongly cautioned that failure to file such a

1

response in a timely manner will result in the court deciding plaintiffs' motion solely on plaintiffs' arguments in support of the motion and the record." (Id. at 2 n.1.) Although the February 13, 2014 deadline has now long passed, defendant failed to file any response to plaintiffs' motion.

After considering the briefing and documentation in support of plaintiffs' motion, the court's record, and the applicable law, the court grants plaintiffs' motion in part.

BACKGROUND

The background facts and procedural history of this case were previously extensively outlined in the court's March 1, 2013 order and findings and recommendations recommending imposition of terminating sanctions against defendant under Federal Rule of Civil Procedure 37 and/or the court's inherent power, which were subsequently adopted by the district judge on June 4, 2013. (ECF Nos. 57, 59.) The background facts and procedural history are not repeated here in full, but are instead incorporated by reference to those prior orders.

In short, plaintiffs, who engineer and supply commercial and residential winter freeze protection products, primarily claimed that defendant TTI breached a settlement agreement concerning a previous lawsuit for infringement of plaintiffs' patent and trademark rights by manufacturing and selling certain products in violation of the settlement agreement, failing to transfer a specified internet domain name to plaintiffs, and continuing to use that domain name to divert customers from plaintiffs. Defendant denied these allegations and asserted counterclaims for declaratory relief, rescission of the settlement agreement, trade libel, slander of title, defamation, unfair competition, and intentional interference with prospective economic advantage. (See ECF No. 57 at 2-3.)

After some amendment to the pleadings, on February 21, 2012, defendant answered plaintiffs' second amended complaint, and on March 16, 2012, plaintiffs answered defendant's counterclaims. (ECF Nos. 20, 21.) A scheduling conference was conducted before the district judge on April 12, 2012, who issued a pretrial scheduling order on April 19, 2012. (ECF Nos. 25, 26.) Thereafter, in the summer of 2012, the parties embarked on written discovery (ECF No. 64-2, ¶ 27), which gave rise to significant disputes and motions to compel.

Ultimately, on June 4, 2013, after finding that defendant failed to comply with its discovery obligations and several court orders,[1] the court granted plaintiffs' motion for discovery sanctions in part, struck defendant's answer and counterclaims, and directed the Clerk of Court to enter defendant's default. (ECF No. 59.) In imposing such terminating sanctions under Federal Rule of Civil Procedure 37 and/or the court's inherent power, the court reasoned that:

> Apart from defendant's dilatory discovery conduct, defendant has failed to comply with the undersigned's order compelling supplemental discovery responses, failed to comply with the district judge's order to obtain new counsel,[2] failed to appear at noticed hearings, and failed to oppose plaintiffs' motion for discovery sanctions, despite having been appropriately notified of these orders, hearings, and motions. It appears that defendant has opted to simply ignore the court's orders, and its conduct is indicative of willfulness and bad faith. This conclusion is reinforced by defendant's continued refusal to substantively respond to discovery requests regarding defendant's alleged transfer of assets and operations to ERDI (a company registered by the wife of defendant's CEO), which plaintiffs suspect may have been done in an attempt to insulate defendant from any potential judgment.

(ECF No. 57 at 12.) The court also observed that defendant's conduct had resulted in significant prejudice to plaintiffs, because the underlying discovery requests leading to the sanctions:

> relate to the extent of defendant's breach of the settlement agreement and plaintiffs' potential damages. Thus, defendant's failure to respond to the discovery has significantly hampered plaintiffs' ability to prove their claims and defend against defendant's counterclaims. It therefore impairs plaintiffs' ability to go to trial and threatens to interfere with the rightful decision of the case.

(Id.) The court concluded that terminating sanctions (in the form of striking defendant's answer and counterclaims, and directing the entry of defendant's default) were appropriate in light of defendant's conduct, which the court found to be "the result of willfulness, fault, and/or bad

---

[1] A detailed discussion of defendant's actions is contained in the court's March 1, 2013 order and findings and recommendations, subsequently adopted by the district judge on June 4, 2013. (ECF Nos. 57, 59.)

[2] The court further concluded that defendant's answer and counterclaims were required to be stricken on the alternative, independent basis that defendant, as a corporation, could not appear in federal court without an attorney. (ECF No. 57 at 8-9.) Defendant's former counsel was permitted to withdraw on December 14, 2012, and defendant was afforded a reasonable opportunity to obtain and appear through new counsel, which did not occur. (ECF No. 50.)

3

1  faith." (Id. at 13-14.)

2  The court further noted that plaintiffs had requested an award of attorneys' fees and costs
3  as monetary sanctions. However, at that time, the court was unable to address the request,
4  because plaintiffs had not submitted any declarations and supporting documentation regarding
5  their fees and costs. Nevertheless, the court permitted plaintiffs to "pursue such a request either
6  as part of any subsequent motion for default judgment or by a separate supported motion, as
7  appropriate." (ECF No. 57 at 14.)

8  Subsequently, on September 3, 2013, the district judge referred the action to the
9  undersigned pursuant to Local Rule 302(c)(21), based on the fact that defendant was no longer
10 represented by counsel. (ECF No. 63.) As noted above, the instant motion for attorneys' fees and
11 costs was filed on December 31, 2013. (ECF No. 64.)

12 DISCUSSION

13 Plaintiffs seek sanctions in the form of an award of their attorneys' fees and costs pursuant
14 to the court's inherent power, based on defendant's bad faith conduct in the course of the
15 litigation.

16 Propriety Of Awarding Requested Sanctions Under The Court's Inherent Power

17 The United States Supreme Court has held that, despite the fact that the "so-called
18 'American Rule' prohibits fee shifting in most cases," "a court may assess attorney's fees when a
19 party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v.
20 NASCO, Inc., 501 U.S. 32, 45-46 (1991) (internal quotation marks and citations omitted); see
21 also Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001) ("In *Chambers*, the Court left no question
22 that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously,
23 wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the
24 litigation for an improper purpose."). Such sanctions are issued pursuant to the court's inherent
25 power, which is "both broader and narrower than other means of imposing sanctions. On the one
26 hand, the inherent power extends to a full range of litigation abuses. On the other, the litigant
27 must have engaged in bad faith or willful disobedience of a court's order." Fink, 239 F.3d at 992;
28 see also Chambers, 501 U.S. at 46 (noting that "whereas each of the other [sanctions]

4

mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices.").

Here, although a substantial amount of defendant's conduct is also sanctionable under Federal Rule of Civil Procedure 37,[3] some of the conduct at issue, such as defendant's failure to comply with non-discovery court orders, and its apparent transfer of assets and operations to a third party company for the improper purpose of insulating itself from a potential judgment,[4] does not in itself strictly implicate Rule 37. Thus, the court concludes that the court's inherent power is the most efficient mechanism for awarding attorneys' fees and costs as monetary sanctions in this matter. See Chambers, 501 U.S. at 50-51 (court may resort to its inherent power to impose attorneys' fees as a sanction for bad faith conduct, even when that conduct could also be sanctioned under the Federal Rules, especially where "conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address."); Fink, 239 F.3d at 994 ("It is well settled, however, that the district court may, in its informed discretion, rely on inherent power rather than the federal rules...."). Furthermore, such sanctions under the inherent power are certainly appropriate in light of the court's prior finding, in the order striking defendant's answer and counterclaims, that defendant's conduct was willful and tantamount to bad faith.

Additionally, the court has considered whether such attorneys' fees and costs should more appropriately be sought as part of a motion for default judgment. However, it is presently far from certain when, or even whether, plaintiffs will be able to move for a default judgment. For

---

[3] For example, in regards to a party's failure to obey a court's discovery order, Federal Rule of Civil Procedure 37 provides that "[i]nstead of or in addition to [other sanctions listed in that Rule], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). No substantial justification or "other circumstances" have been raised here.

[4] Although the court's finding concerning the apparent transfer of assets is based on plaintiffs' counsel's investigation and representations, the court notes that defendant failed to oppose those representations despite having had several opportunities to do so in the context of the present motion and the earlier February 8, 2013 motion for sanctions. As such, defendant cannot be heard to complain that its due process rights were somehow violated by making such a finding.

example, the court gleans from plaintiffs' briefing that they would face significant difficulties in establishing the amount of their damages in light of defendant's failure to respond to related discovery requests. As plaintiffs suggest, monetary sanctions may ultimately prove to be the only recourse they ever have against defendant.

Moreover, because plaintiffs had initially sought monetary sanctions as part of its prior motion for discovery sanctions, but had not at that time supported the request with appropriate briefing and documentation, the court invited plaintiff to seek such fees and costs either as part of any subsequent motion for default judgment or by a separate supported motion. As such, the instant motion is properly construed as a separate supported motion seeking such fees and costs in compliance with the court's order.

Having concluded that plaintiffs are entitled to an award of monetary sanctions in the form of attorneys' fees and costs pursuant to the court's inherent power, the court now proceeds to determine the amount of fees and costs to be awarded.

Amount Of Attorneys' Fees And Costs To Be Awarded

Plaintiffs seek a total of $68,116.16 – the total amount of attorneys' fees and costs plaintiffs incurred in this litigation. (See Declaration of John. C. McCarron, ECF No. 64-2 ["McCarron Decl."] ¶ 3.) Plaintiffs' lead litigation counsel, John McCarron, initially commenced the litigation in May 2011 while he was a partner at the law firm of Stern, Van Vleck & McCarron, LLP ("SVM"). Subsequently, in June 2012, Mr. McCarron joined the law firm of Downey Brand LLP ("Downey Brand"), which then undertook representation of plaintiffs. Thus, plaintiffs' attorneys' fees and costs were incurred at two separate law firms – SVM and Downey Brand. (Id. ¶¶ 1-4.)

As an initial matter, the court finds plaintiffs' counsel's hourly rates to be reasonable and consistent with, if not below, prevailing rates for business litigation in the Sacramento legal community. In particular, plaintiffs' counsel used the following reduced hourly rates in billing for this matter, both at SVM and/or Downey Brand: (1) $300 for the lead litigation counsel and partner with over 25 years of litigation experience; (2) $275 for a contract attorney with approximately 10 years of litigation experience and for two ninth-year associates; (3) $270 for a

1  fourth-year associate; and $120 for two summer associates who worked on discrete projects.
2  (McCarron Decl. ¶¶ 4-12.)

3  Furthermore, after a review of plaintiffs' counsel's detailed time records and bills, the
4  court finds the number of hours spent to have been reasonable. (See McCarron Decl. Exs. A-C.)
5  Plaintiffs' counsel has already voluntarily written off certain charges for time spent getting new
6  attorneys up to date and for potentially duplicative work during such transition periods, and is not
7  pursuing other designated charges that are only tangentially related to this litigation. (Id. ¶¶ 16-
8  19.) In any event, by twice failing to oppose plaintiffs' motion for attorneys' fees and costs after
9  appropriate notice, defendant has waived any argument that the time spent on any particular task,
10 and/or the total number of hours spent on this case, are unreasonable.

11  The only aspect of plaintiffs' request that gives the court pause is that plaintiffs are
12 requesting their attorneys' fees and costs for the *entire litigation* since it was commenced in May
13 2011. The United States Supreme Court has observed that a court has discretion under its
14 inherent power to award "attorneys' fees representing the entire cost of the litigation," especially
15 when warranted by the frequency and severity of the abuses involved, and the resulting need to
16 ensure that such abuses are not repeated. Chambers, 501 U.S. at 45 (affirming award of
17 $996,644.65 in monetary sanctions, which represented the entire amount of attorneys' fees and
18 expenses incurred by the opposing party). Nevertheless, the Supreme Court also cautioned that,
19 "[b]ecause of their very potency, inherent powers must be exercised with restraint and
20 discretion." Id. at 44.

21  In Chambers, the sanctioned party commenced a pattern of bad faith conduct to thwart the
22 litigation proceedings before the lawsuit was even commenced, by conveying the properties at
23 issue in a sham transaction before the opposing party could file the lawsuit and obtain a
24 temporary restraining order. This initial conduct was then followed by numerous other abuses of
25 the judicial process and failure to comply with court orders during the litigation. Chambers, 501
26 U.S. at 35-39. By contrast, in this case, based on the record before the court, defendant's pattern
27 of misconduct *with respect to the litigation proceedings* only developed when written discovery
28 commenced. There is no objective indication in the record that defendant acted in bad faith or

with an improper purpose during the initial pleadings phase of the litigation. While defendant may well have engaged in other improper or unlawful conduct prior to the time of commencing discovery, such as the underlying conduct giving rise to plaintiffs' substantive claims, such conduct does not ordinarily warrant the imposition of monetary sanctions pursuant to the court's inherent power.

Therefore, in its discretion, the court awards only plaintiffs' counsel's fees and costs incurred as of June 2012 ($32,577.00 in fees and $274.29 in costs, for a total of $32,851.29), which is approximately when the bulk of the written discovery commenced and several of the discovery requests for which plaintiffs never received proper responses were prepared.[5] (McCarron Decl. Exs. A-C.)

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for attorneys' fees and costs (ECF No. 64) is GRANTED IN PART.
2. Plaintiffs are awarded a total of $32,851.29 in attorneys' fees and costs, imposed as monetary sanctions against defendant.
3. A status conference in this matter is set for April 10, 2014, at 10:00 a.m., in Courtroom No. 25 before the undersigned. No later than April 3, 2014, plaintiffs shall file a brief statement indicating whether and how they would like to proceed with this case.

IT IS SO ORDERED.

Dated: March 10, 2014

*Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[5] The June 2012 time period coincides with the time that Downey Brand became the law firm of record for plaintiffs. Thus, the court awards the fees and costs billed by Downey Brand, but not the fees and costs billed by SVM prior to June 2012, the vast majority of which were devoted to the pleadings and initial scheduling of the case. (McCarron Decl. Exs. A, B.)